**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**KIMBERLY HARPER, MIRANDA**                           **PLAINTIFFS**
**PARROTT, ROY ALLEN, SHENNETTA**
**DRAUGHN, FORREST W. MASSA, JR.,**
**CAREY STEWART, and CYNTHIA C.**
**KELLY**

**v.**                                       **CASE NO. 2:18-CV-31-KS-MTP**

**SOUTHERN PINE ELECTRIC**                             **DEFENDANT**
**COOPERATIVE**

**SOUTHERN PINE ELECTRIC COOPERATIVE'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
<u>TO DISMISS PLAINTIFFS' FOURTH AMENDED COMPLAINT</u>**

Southern Pine Electric Cooperative ("Southern Pine" or "Cooperative"), by and through

the undersigned counsel, hereby files this Memorandum of Law in support of its Motion to Dismiss

the Fourth Amended Complaint (the "Motion") filed by Kimberly Harper, et al. (the "Plaintiffs")

for failure to state a claim, stating as follows:

## TABLE OF CONTENTS

Page(s)

I.   INTRODUCTION AND BACKGROUND ................................................................ 1

II.  ARGUMENT ................................................................................................................ 4

    A.   Other Courts Have Dismissed Nearly Identical Lawsuits Against Other Rural Electric Cooperatives ................................................................................................ 4

    B.   Plaintiffs' Claims Under § 77-5-235 Fail as a Matter of Law ........................... 6

        i.    The Current Version of § 77-5-235 Applies ................................................ 6

        ii.   Plaintiffs Misinterpret § 77-5-235 ................................................................ 8

        iii.  Section 77-5-235 Does Not Create a Private Right of Action ............................ 10

        iv.   Plaintiffs have no vested right to redeem their capital credits on demand .......... 12

        v.    The Internal Financial Decisions of the Cooperative Fall within the Discretionary Business Judgment of the Board .................................................... 13

    C.   Plaintiffs' Other Statutory and Common Law Claims Fail as a Matter of Law ......... 15

        i.    Count II (Fraudulent Concealment) Must Be Dismissed ..................................... 15

        ii.   Count III (Breach Of Fiduciary Duty) Fails as a Matter of Law ......................... 16

        iii.  Count IV (Unjust Enrichment) Fails Because Plaintiffs have a Written Contract and Thus an Adequate Remedy At Law ................................................. 17

        iv.   Count V (Conversion) Cannot be Based on a Mere Obligation to Pay an Untraceable, Non-Specific Amount of Money ....................................................... 18

        v.    Count VI (Constructive Trust) is Not an Independent Cause of Action ............... 20

        vi.   Count VII (Statutory Trust) Cannot be Pled as an Independent Cause of Action ............................................................................................................... 21

        vii.  Count VIII (Money Had and Received) is Without Merit .................................... 22

        viii. Count IX (Negligence Per Se) Fails as a Matter of Law ..................................... 22

        ix.   Plaintiffs' Declaratory Judgment Claim is Without Merit................................... 23

    D.   Portions of Plaintiffs' Request for Relief Must Be Stricken........................................ 24

        i.    Prayer for an Accounting ................................................................................... 24

        ii.   Request for Attorneys' Fees................................................................................ 24

        iii.  Appointment of Receiver .................................................................................... 25

III. CONCLUSION ........................................................................................................... 25

# I.  **INTRODUCTION AND BACKGROUND**

Southern Pine is a non-profit, member-owned rural electric power association organized and subject to Mississippi's Electric Power Association Law, Miss. Code § 77-5-201, *et seq.* Organized in 1938, Southern Pine currently provides nearly 10,000 miles of energized line serving more than 65,000 meters in 11 counties in South Mississippi.  Rural electric cooperatives like Southern Pine are member-owned and members provide the capital necessary to establish, expand, and maintain the facilities needed to provide electric service to this rural area.  The business and affairs of Southern Pine are managed by a Board of Directors that is comprised of members and elected by the members pursuant to Mississippi Code § 77-5-221 and Southern Pine's Bylaws.[1]

Generally speaking, members of cooperatives help finance the production and delivery of electrical service to their communities by paying their electric bills.  Each year when electric cooperatives close their books, revenue from operations that exceeds the costs of providing electrical service is invested back into the cooperatives by the members as capital, allowing the cooperatives to buy equipment, make capital improvements, pay debt obligations, lower rates by avoiding increased debt, and otherwise operate. If amounts received from providing electric energy

---

[1] Plaintiffs fail to mention or attach the Cooperative's Bylaws to the operative Complaint.  Nonetheless, the Bylaws are integral to Plaintiffs' claims, are inextricably interwoven with Plaintiffs' allegations, govern the parties' relationship, and address the very relief requested by Plaintiffs.  Indeed, Mississippi Code 77-5-223 requires the Board to adopt and amend bylaws, and Mississippi Code 77-5-203 defines a "member" of an electric cooperative as an individual retaining membership pursuant to the cooperative's Bylaws.  Further, although Plaintiffs artfully choose to leave out the Bylaws, the Bylaws govern the relationship between the Plaintiffs and the Cooperative.  Because the Bylaws are central to Plaintiffs' claims, this Court may consider the Bylaws in ruling on the Motion to Dismiss.  *See In re MCI Worldcom, Inc. Sec. Litig.*, 191 F. Supp. 2d 778, 781 (S.D. Miss. 2002) (recognizing that the Court may consider documents "relied upon by Plaintiffs in their Complaint") (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (finding that, "[w]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a prospectus upon which it solely relies and which is integral to the complaint, the defendant may produce the prospectus when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure")); *see also PowerTrain, Inc. v. Ma*, 1:11-CV-00105-GHD, 2014 WL 3897722, at *3 (N.D. Miss. Aug. 8, 2014) ("[A] district court may take into account documents incorporated into the complaint by reference or *integral to the claim*….") (emphasis added).  Attached as **Exhibit A** to the Motion is the affidavit of Jason Siegfried, General Manager of Southern Pine.  Attached to the Siegfried Affidavit is a true and correct copy of the Bylaws in effect at the time the Complaint was filed in this action.

exceed operating costs and expenses, this amount is allocated as "capital credits," also called "patronage capital." Bylaws, Section 8.02. These capital credits are recorded on the books of the cooperatives and repaid on a pro-rata basis to members and former members upon dissolution, or at such time that the cooperative Boards of Directors decide in their business judgment that the cooperatives can retire these credits without financially impairing their ability to deliver electricity to their members. This is the process that all non-profit electric cooperatives operate under to comply with IRS regulations. Southern Pine, as a non-profit, follows this process as well.

Plaintiffs, who are members of Southern Pine,[2] are demanding the early return of capital credits by claiming incorrectly that such capital must be returned under Mississippi Code 77-5-235 (the "Act"). However, there are two major problems with Plaintiffs' lawsuit which warrant dismissal. First, the Act does not require Southern Pine to make cash payments to their members of all equity in excess of thirty percent. In fact, thirty percent is not even referenced in the Act and it does not say that a cooperative can never have more than thirty percent equity. Furthermore, the Act does not say that equity greater than thirty percent must be paid to the members in cash as Plaintiffs demand in this lawsuit. Instead, it provides the Board with great discretion in determining the calculation of excess revenues and the method by which it should be returned to the members, if indeed a cooperative has any excess. The Act provides in pertinent part as follows:

> A corporation's rates for energy furnished or offered by the corporation shall be sufficient at all times to pay all operating and maintenance expenses necessary or desirable for the prudent conduct and operation of its business and to pay the principal of and interest on such obligations as the corporation may have issued and/or assumed in the performance of the purpose for which it was formed. ***The revenues and receipts of a corporation shall first be devoted to such operating and maintenance expenses and to the payment of such principal and interest and thereafter to such reserves for improvement, new construction, depreciation and contingencies as the board may from time to time prescribe***. Revenues and receipts not needed for these purposes shall be returned to the members ***by such means as***

---

[2] Southern Pine notes that Shennetta Draughn is not a member of Southern Pine according to its business records and does not have standing to bring such suit.

*the board may decide*, including through the reimbursement of membership fees, the implementation of general rate reductions, the limitation or avoidance of future rate increases, *or such other means as the board may determine*.

Miss. Code Ann. § 77-5-235(5) (2017) (emphasis added).[3]

Second, Plaintiffs are using the Act to demand the early return of patronage capital, when in fact the Act only governs the return of **excess revenues**, which are a subset of patronage capital.[4] Plaintiffs' Complaint seeks the return of $112,500,000, an amount which admittedly relates to patronage capital on the books of Southern Pine. *See* Original Complaint ¶ 5 at Dkt. 1-2. However, as determined by the Mississippi Supreme Court and other courts around the country, it is well settled that capital credits are not payable to members on demand. *See, e.g., Clarke County Coop., (AAL) v. Read*, 139 So. 2d 639, 642 (Miss. 1962) ("We are of the opinion that equity credits are not an indebtedness of a cooperative which is presently due and payable."). In line with this well settled law, the Bylaws of the Cooperative provide that capital credits will be paid to the members when the Board determines that the Cooperative will not be financially impaired by doing so.

The gravamen of Plaintiffs' Complaint is that Southern Pine should be forced to immediately pay each member their patronage capital.[5] But immediate liquidation of patronage

---

[3] This provision of the Mississippi Code was amended in 2016. Here, the **current** version of the statute would necessarily apply because Plaintiffs are bringing a statutory claim to which they have no vested right, are seeking prospective relief and the return of capital on Defendant's books **after** the amendment to § 77-5-235 went into effect. Nonetheless, under either the current *or* former version of the Mississippi statute, dismissal is proper.

[4] The Act only relates to excess revenues, and the statutory calculation for excess revenues is completely different from the calculation of patronage capital set out in the Bylaws. Excess revenues involve the subtraction of numerous additional categories of deductions (payment of principal and reserves for improvement, new construction, depreciation and contingencies) that are beyond merely subtracting operating costs and expenses when calculating patronage capital. Thus, even when the Cooperative has patronage capital on its books at the end of a given year, the Cooperative may not have statutory excess revenues as calculated under the Act that year. The chart attached as **Exhibit B** to the Motion summarizes the difference in calculating capital credits and calculating excess revenues.

[5] Over the past ten years, numerous copycat lawsuits like this one have been filed against electric cooperatives nationwide. Indeed, this is one of *eight* cases pending across the state of Mississippi, all of which raise the same claims and which have been filed by the same Plaintiffs' firm. As discussed herein, almost every court to consider these cases recently—including the Eleventh Circuit, the Third Circuit, the Northern District of Florida, the Southern District of Alabama, the Georgia appellate courts, the Texas appellate courts, the Western District of Pennsylvania, the Montana state courts, and the Florida state courts—has flatly rejected the claims raised by the Plaintiffs. While Plaintiffs contend that the underlying purpose of these lawsuits is to benefit the members, a decision in Plaintiffs' favor will actually have the opposite effect. Electric cooperatives are capital-intensive. In addition to being required

3

capital is not contemplated by the Act and contrary to the Bylaws, which allow for the return of patronage capital based on the Board's business judgment, meaning Plaintiffs have no right to demand payment of patronage capital or demand that excess revenue be paid out in cash. Plaintiffs' Complaint thus misinterprets the Act, disregards the parties' contract (the Bylaws), fails to state a claim for relief, and should be properly dismissed with prejudice in its entirety.

## II.  ARGUMENT

The underlying issue relevant to all of Plaintiffs' claims against Southern Pine is whether cooperatives must immediately return all but thirty percent of the patronage capital it receives in a given year to its members under Miss. Code Ann. § 77-5-235. Plaintiffs' claims are all based on the Act and their incorrect interpretation of it. Plaintiffs' Complaint is subject to dismissal for the following reasons: (A) Other courts across the country, including the Eleventh and Third Circuits, have sided with cooperatives like Southern Pine and dismissed these lawsuits; (B) Plaintiffs claims related to the Act fail as a matter of law; (C) Plaintiffs' other statutory and common law claims are similarly deficient as a matter of law, but should also be independently dismissed on additional grounds; and (D) Plaintiffs' requested relief contains numerous demands that must be stricken.

### A.  Courts Have Dismissed Nearly Identical Lawsuits Against Electric Cooperatives

Plaintiffs' claims are similar to other recent lawsuits filed against electric cooperatives across the country.  Nearly every court in the United States, at both the federal and state levels, that has considered these types of claims has rejected arguments like the one Plaintiffs bring now, dismissing such cases with prejudice.  As explained in the summaries below, the courts ruled for

---

by lenders to maintain minimum capital levels, the capital received from members is critical to capital improvements and the operation of the cooperative. Thus, the practice of allocating patronage capital to members is vital to the long-term sustainability of every electric cooperative. If this Court adopts Plaintiffs' theory, cooperatives will have no choice but to raise rates or take on loans to the very detriment of the members Plaintiffs seek to represent.

the defendant cooperatives and dismissed the lawsuits because state excess revenue statutes do not

compel the immediate cash repayment of capital credits or patronage capital to its members:

- *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1147 (11th Cir. 2017) (upholding dismissal of claims where plaintiffs demanded payment of capital credits and excess revenues, finding "nowhere does that [excess revenue] section require a cash payment, much less an annual one.… Telling too, the relevant portion of the statute does not use the words "cash" or "pay." Nor does the statute expressly forbid [the cooperative] from using methods other than a cash payment to make the required distributions.… Nothing in the statute imposes the specific requirement that all patronage refunds be made in a cash manner.");

- *Cessna v. REA Energy Coop., Inc.*, 753 F. App'x. 124, 1128-29 (3d Cir. 2018) (upholding a district court's decision to dismiss claims against an electric cooperative related to its distribution of capital credits and retention of patronage capital based on a plain reading of the cooperative's bylaws);

- *Clarke*, 139 So. 2d at 642 ("A patron of a cooperative having by-laws such as appellant, is bound by such by-laws and cannot contend that when equity credits are allocated upon the books of the cooperative that an indebtedness is thereby created which is immediately due and payable to him by the cooperative.");

- *Wolfe v. Flathead Elec. Coop.*, Case No. DV-16-755(A), 2017 WL 8184353, at *7 (Mont. 11th Dist. Ct. Dec. 21, 2017) (dismissing similar suit and concluding "based on the plain language of the statute, there is no genuine issue of material fact that [the cooperative's] capital credit retention policy is consistent with [Montana law].");

- *Cessna v. REA Energy Coop., Inc.*, 258 F. Supp. 3d 566, 596 (W.D. Pa. 2017), reconsideration denied, 3:16-CV-42, 2018 WL 816844 (W.D. Pa. Feb. 9, 2018) (granting motion to dismiss claims for breach of fiduciary duty, unjust enrichment, breach of the covenant of good faith and fair dealing, unfair trade practices, and breach of contract in case where plaintiff was demanding the return of patronage capital and excess revenues).

- *Caver v. Cent. Ala. Elec. Coop.*, Case No. 2:15-cv-00129-WS-C, 2015 WL 5286501, at *4 (S.D. Ala. Sept. 8, 2015) (granting motion to dismiss claims by plaintiffs demanding payment of patronage capital and claiming violation of excess revenue statute); *see also Davis v. Cent. Ala. Elec. Coop.*, Case No. 2:15-cv-00131-WS-C, 2015 WL 5285894, at *4 (S.D. Ala. 2015);

- *Simmons v. W. Fla. Elec. Coop. Ass'n, Inc.,* Case No. 5:15cv321-RH/GRJ, 2017 WL 901102, at *2 (N.D. Fla. Mar. 7, 2017) (granting motion to dismiss putative class action holding that plaintiffs had misinterpreted excess revenue statute);

- *Walker et al. v. Oglethorpe Power Corp. et al.*, 802 S.E.2d 643, 666 (Ga. App. 2017) (dismissing claims for patronage capital and noting that "[t]he specific provisions regarding the allocation and retirement of patronage capital unambiguously provide that the only time when [the cooperative's] board of directors is required to refund patronage capital is at the

time of dissolution or liquidation, but that its board of directors may (but is not required to) do so at other times under certain conditions.");

- *Shapiro et al v. Ogelthorpe Power Corp. et al.,* Case No. 14CV8323, at 10-11 (Ga. Superior Court 2016) (dismissing similar case brought by plaintiffs against electric cooperative and finding that "[t]he distribution of patronage capital is discretionary except upon dissolution after the satisfaction of all obligations. [Electric cooperative] members do not have a vested interest in their patronage capital allocation until the board exercises its discretion and determines it is financially prudent to distribute patronage capital. . . . **The discretion given to each [electric cooperative]'s board by statute and their bylaws means there is no legal obligation for the [electric cooperative] to pay patronage capital on a fixed schedule**.") (a copy of the *Shapiro* order is attached as **Exhibit C** to the Motion);

Like the courts above, this Court should dismiss Plaintiffs' claims with prejudice.

**B.     Plaintiffs' Claims Under § 77-5-235 Fail as a Matter of Law**

Plaintiffs' claims against Southern Pine are all premised on § 77-5-235 and the alleged obligation to return patronage capital under the Act. However, Plaintiffs fail to consider the following: (i) under the current, amended version of the Act, Plaintiffs' claims cannot stand as a matter of law; (ii) the Act does not require a cooperative to make immediate cash payments to its members; (iii) the Act does not create a private right of action; (iv) Plaintiffs do not have a vested right in the patronage capital they are seeking; and (v) decisions of the Board related to patronage capital are protected under the business judgment rule and not subject to this Court's review.

i. The Current Version of § 77-5-235 Applies

Plaintiffs frequently quote and rely on a version of the Act before it was amended in 2016, claiming the pre-amendment version applies to this case. This is because Plaintiffs have no cause of action under the statute as amended, and they have admitted as much.[6] During oral argument before the Fifth Circuit in this case, Plaintiffs' counsel described the revisions to § 77-5-235:

> The 2016 amendment was clever . . . . Now what do[es the Cooperative's Board of Directors] get to do? Reduce rates or return member fees or, guess what, anything else unless the board of directors provides otherwise. This is an escape. **It's an**

---

[6] Plaintiffs' claims also fail under the old version of § 77-5-235.

> **escape clause to allow [the Cooperative's Board of Directors] to use the money that they've accumulated over decades and decades as they will.**

Oral Arg. Hr'g Tr. at 24, attached to the Motion as **Exhibit D**.

Southern Pine agrees with Plaintiffs' counsel's admission that the amended and currently operative version of § 77-5-235 unequivocally grants broad discretion to the Board to determine when and how to distribute excess revenues to cooperative members if a cooperative has any excess revenues. It specifically provides that the Board may return excess revenues to cooperative members using options listed in the statute or by "such other means as the board may determine." Miss. Code Ann. § 77-5-235(5) (2019). This language undermines the validity of any claim purporting to require the Board to issue immediate cash disbursements to cooperative members.

However, just because Plaintiffs prefer the language of the pre-2016 version of the Act, Plaintiffs cannot pick and choose which version of the Act applies to this case. Where a cause of action is based on a statute, any amendment made to the statute prior to entry of final judgment applies to the action. *Wilson v. Nelson Hall Chevrolet*, 871 F. Supp. 279, 280 (S.D. Miss. 1994) ("[I]f a statue creates the right, then any amendments to the statute that become effective before final judgment has been entered, or before rights created by the statute vest, must be applied."). Plaintiffs' claims are based on Miss. Code Ann. § 77-5-235. *See, e.g.*, State Court Docket No. 91 at 21 ("Plaintiffs maintain that . . . Section 77-5-235 itself [] demonstrates that a private right of action exists for violations thereof."). Therefore, any amendment made to Miss Code Ann. § 77-5-235 prior to the entry of final judgment applies to Plaintiffs' claims.

Moreover, in *Oliphant v. Carthage Bank*, the Mississippi Supreme Court analyzed the applicability of statutory amendments and stated as follows:

> It is well-settled by the decisions of our Court, and in most every other jurisdiction, that when proceedings are in process under a statute and have not been completed, and have not reached the stage of final judgment, and a new act is passed, modifying

the statute under which the proceedings were begun, the new statute becomes integrated into and a part of the old statute as fully as if written therein from the very time the old statute was enacted . . . .

80 So. 2d 63, 72 (Miss. 1955). "The result of this rule is that every right or remedy created solely by the repealed or modified statute disappears or falls with the repealed or modified statute, unless carried to final judgment before the repeal or modification . . . ." *Cellular S., Inc. v. BellSouth Telecomms., LLC*, 214 So. 3d 208, 214 (Miss. 2017) (citation omitted).

Here, Plaintiffs' case was filed well over a year after the amended statute took effect and premises its request for relief on amounts from Southern Pine's books that post-date the amendment by several months. Moreover, Plaintiffs seek prospective relief regarding the future disbursement of patronage capital and the imposition of a receiver on a going-forward basis to control the same. Therefore, there can be no doubt that the post-2016 version of the Act—today's current § 77-5-235—controls Plaintiffs' cause of action. Even though the current version of the statute clearly controls, Plaintiffs' claims fail under the pre-amendment statute as well. The prior version also allows the Board discretion to apply capital credits "to such reserves for improvement, new construction, depreciation and contingencies *as the board may from time to time prescribe*." Miss. Cod. Ann. § 77-5-235 (1936) (emphasis added). "Revenues and receipts not needed for these purposes shall be returned to the members, by the reimbursement of membership fees, or by way of general rate reductions, *as the board may decide*." *Id.* (emphasis added). The Board's discretion is apparent even in the old, non-operative version of the statute. Under either version of the statute, Plaintiffs cannot demand distribution of capital credits from the Board, because "equity credits allocated to a patron on the books of a cooperative do not reflect an indebtedness which is presently due and payable by the cooperative to such patron." *Clarke*, 139 So. 2d at 641.

ii. Plaintiffs Misinterpret § 77-5-235

8

Plaintiffs allege that Southern Pine violated § 77-5-235 by failing to immediately refund, in cash, excess member equity above an arbitrary 30% threshold established by Plaintiffs. Plaintiffs' interpretation of Mississippi Code § 77-5-235 is flawed on numerous levels.

First, the Act does not impose a 30% cap on member equity, as pled by Plaintiffs. In fact, a plain reading of the Act reveals there is no limit or presumptive cap at all. This is because the Mississippi Electric Power Association Law delegates a decision regarding healthy levels of member equity, as well as all other critical operational functions, to Southern Pine's Board.[7] Therefore, any violation of Plaintiffs' arbitrary 30% threshold for member equity cannot possibly be a violation of the Act, as it does not derive its basis from the Act at all.

Second, Plaintiffs are seeking a cash payment of their patronage capital despite the Act not mandating cash payouts. The Act states that all patronage capital can be returned to its members "by such means as the board may decide[.]" Miss. Code Ann. § 77-5-235(5). The Act also contemplates a return of patronage capital through "the reimbursement of membership fees, the implementation of general rate reductions, the limitation or avoidance of future rate increases, or such other means as the board may determine." *Id.* Notably absent from the list is a direct cash payment to the members of a cooperative. As such, Plaintiffs cannot maintain a cause of action under the Act related to Southern Pine's alleged failure to return patronage capital via a direct cash payment because the same is not required by the Act.

Third, Plaintiffs demand their cash payment be made immediately. However, there is no requirement in the Act that Southern Pine return patronage capital to its members on demand, or even annually. *Id.* Rather, the plain language of the Act entrusts the Board with the discretion of

---

[7] Miss. Code Ann. § 77-5-223 ("The board of a corporation shall have power to do all things necessary or convenient in conducting the business of the corporation, including, . . . the disposition of the revenues and receipts of the corporation."); § 77-5-235 (authorizing the Board to make determinations on how to allocate revenues in excess of operating expenses in order to maintain a viable and low-cost provider of electric power).

when and how to return patronage capital and there is no requirement or obligation to make immediate payment to a member. *Id.* This plain reading of the statute has been affirmed by the Mississippi Supreme Court, who has similarly determined Southern Pine and other electric cooperatives are under no immediate obligation to return patronage capital to members. *Clarke*, 139 So. 2d at 641 ("We are of the opinion that equity credits are not an indebtedness of a cooperative which is presently due and payable.").

Finally, Plaintiffs claim that the amount of revenues that exceed operating costs and expenses, which is really patronage capital and not excess revenues, should be returned pursuant to § 77-5-235. Compl., ¶¶ 83-86. However, this argument conflates patronage capital with excess revenue and ignores several items the Act deducts from a calculation of excess revenue that is not deducted from patronage capital. For example, Plaintiffs fail to recognize that § 77-5-235 allows Southern Pine to use its revenues to fund not only operating costs and expenses, but also the payment of principal and interest, improvements, new construction, depreciation, and contingencies as the board may from time to time prescribe. It is only ***after*** these capital expenses are removed from a cooperative's margins (i.e., the difference between a cooperative's revenues and operating expenses) that the Act will deem there to be excess revenues.

As such, Plaintiffs' misinterpretation of the Act and attempts to add obligations that are otherwise completely absent from the Act's requirements result in Plaintiffs' claims failing as a matter of law and subject to dismissal.

### iii. Section 77-5-235 Does Not Create a Private Right of Action

Although Plaintiffs argue that Southern Pine has violated § 77-5-235, the Act does not create a private right of action for members to challenge the discretionary actions of their cooperative's board. Indeed, "a mere violation of statute or regulation will not support a claim

where no private cause of action exists." *Tunica Cnty. v. Gray*, 13 So. 3d 826, 829 (Miss. 2009). Under Mississippi law, "the general rule for the existence of a private right of action under a statute is that the party claiming the right of action must establish a legislative intent, express or implied, to impose liability for violations of that statute." *Id.* Legislative intent is determined primarily from the language of a statute. *Id.* at 829 ("To determine whether a statute creates a private right of action … [t]he focal point is the legislative body's intent in enacting the statute."). "Unless the legislative intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." *Id.*

If the legislature intended to permit a private right of action for a violation of § 77-5-235, it would have explicitly said so, but it did not. Instead, the Act was adopted by the Mississippi legislature in 1936 with the purpose, as set forth in § 77-5-203, to permit the formation of "a corporation not organized for pecuniary profit for the purpose of promoting and encouraging the fullest possible use of electric energy by making electric energy available at the lowest cost consistent with sound economy and prudent management of the business of such corporations." The statute has only been amended once—in 2016—and the purpose of the amendment was "to provide that all rates of a corporation formed under this article shall be established by the corporation's board with certain exceptions." *See* 2016 Miss. House Bill No. 1139. In other words, the purpose is not to allow consumers to bring lawsuits against the cooperative, but to ensure that cooperatives provide electricity to underserved rural areas, and to do so at affordable rates.

The Act, which does not provide for a private right of action, must be read in the context of § 77-5-203, which makes clear that a private right of action was not the intent of the Legislature. Indeed, the Mississippi legislature is fully capable of including a private right of action where it deems it appropriate, as it expressly provided a private right of action elsewhere in the Electric

Power Association Law for provisions not at issue in this case. *See* Miss. Code Ann. § 77-5-259 (expressly contemplating "action[s]" related to overbilling or underbilling). Instead, the Mississippi legislature created various mechanisms under which the members of an electric cooperative may affect corporate change—i.e., through voting (§ 77-5-227); replacement of directors (§ 77-5-221); or even amending the cooperative's certificate of incorporation (§ 77-5-215). As such, Plaintiffs' claims must be dismissed with prejudice.

     iv.  <u>Plaintiffs have no vested right to redeem their capital credits on demand</u>

Plaintiffs do not have a vested right in their capital credits that would justify their demand for immediate payment of the same. Based on the Bylaws, Southern Pine members have no vested interest in their patronage capital accounts until the Board exercises its discretion and determines it is financially prudent to pay the patronage capital to the members. *Clarke*, 139 So. 2d at 641. Indeed, it is within the sole discretion of the Board, pursuant to the authority delegated by the members, to determine the manner, method, and timing of retiring capital credits. *See* Bylaws, Section 8.02; *see also* Section B(ii), *supra*.

In addition to the Mississippi Supreme Court in *Clarke*, other courts have held that a member's right to patronage capital is not presently due and payable to the member upon demand, but instead vests when the Board exercises its sound discretion and determines the cooperative will not be financially impaired by the retirement:

- *Great Rivers Co-op. of S.E. Iowa v. Farmland Indus., Inc*., 198 F.3d 685, 704 (8th Cir. 1999) (holding that "[t]he discretion granted to the Board in connection with the redemption of capital credits, of necessity, includes the Board's determination of the timing of the redemptions and [the cooperative's] financial ability to redeem the credits.");

- *In re FCX, Inc*., 853 F.2d 1149, 1153 (4th Cir. 1988) (holding that "[a patron's] interest [in patronage certificates] is limited; the certificates are not currently due and payable or payable on demand.");

- *Ga. Turkey Farms, Inc.,* 369 S.E.2d at 806 (giving "full discretion [to a board] to adopt bylaws relating to the redemption of capital interests [removes] any limitation on the time this redemption is to occur.")

- *Walker*, 802 S.E.2d at 666 ("The specific provisions regarding the allocation and retirement of patronage capital unambiguously provide that the only time when [a cooperative]'s board of directors is required to refund patronage capital is at the time of dissolution or liquidation, but that its board of directors may (but is not required to) do so at other times under certain conditions.")

- *Shapiro,* **Exhibit C**, at *6 ("The allocation and retirement of patronage capital are two separate matters. The requirement of allocating patronage capital may arise annually if net margins exist, while the distribution of patronage capital is discretionary except upon dissolution after the satisfaction of all obligations. [Electric cooperative] members do not have a vested interest in their patronage capital allocation until the board exercises its discretion and determines it is financially prudent to distribute patronage capital.... The discretion given to each [cooperative's] board by statute and their bylaws means there is no legal obligation for the [cooperative] to pay patronage capital on a fixed schedule.")

- *Atchison Cty. Farmers Union Co-op. Ass'n v. Turnbull*, 736 P.2d 917, 921 (Kan. 1987) (holding that a cooperative member's equity credits were "contingent and not immediately payable" and became "vested when the board of directors, following the bylaws, exercises its sound discretion and determines that [payments of the equity credits] can be made without causing undue financial hardship to the [cooperative].");

- *Evanenko v. Farmers Union Elevator*, 191 N.W.2d 258, 261-62 (N.D. 1971) (holding that patronage credits are a contingent interest that "become vested only when the board of directors, in the exercise of its sound discretion, determines that such payments can be made in cash without causing undue financial hardship to the cooperative.");

- *Howard v. Eatonton Co-op. Feed Co*., 177 S.E.2d 658, 662 (Ga. 1970) ("It is well established that equity credits allocated to a patron on the books of a co-operative do not reflect an indebtedness which is presently due and payable by the co-operative to such patron... Equity credits are not an indebtedness of a co-operative which is presently due and payable to the members, but represent an interest which will be paid to them at some unspecified later date to be determined by the board of directors.")

Consequently, Plaintiffs' claims against Southern Pine for not retiring patronage capital in the manner of Plaintiffs' choosing fail as a matter of law.

  v. <u>The Internal Financial Decisions of the Cooperative Fall within the Discretionary Business Judgment of the Board</u>

   In Mississippi, a Board is given wide discretion in the performance of its duties and a court generally will not substitute its judgment for that of the Board.  *See Assoc. Cas. Ins. Co. v. Allstate*

*Ins. Co.*, No. 2:09cv24KS-JCS, 2009 WL 415296, at *6 (S.D. Miss. Feb. 18, 2009). Under the business judgment rule, the Board is presumed to have made decisions in good faith, and in the honest belief that the action taken was in the best interests of the company. *Id.*; *City of Picayune v. S. Reg'l Corp.*, 916 So. 2d 510, 523 (Miss. 2005) ("As a general rule, the courts refrain from interfering with internal management of a corporation and do not interfere in the affairs of a private corporation in the absence of proof of bad faith or fraud. . .").

In a similar case where former members of a cooperative brought a class action to compel the distribution of money from the cooperative's reserve accounts that had been allocated to the cooperative's members, the Florida Supreme Court refused to second-guess the board's decisions and applied the business judgment rule. *Lake Region Packing Ass'n v. Furze*, 327 So. 2d 212, 214-215 (Fla. 1976). The Florida Supreme Court held that a court cannot compel a distribution to members where the cooperative's bylaws provide for the distribution of excess reserves to members only at the discretion of the board of directors. *Id.* at 216. The court explained that the decision whether to distribute funds from the capital accounts is an exercise of business judgment over which the court will not interfere absent a showing of impropriety by the directors. *Id.* The court further explained that "corporate directors have wide discretion in the performance of their duties and a court of equity will not attempt to pass upon questions of the mere exercise of business judgment, which is vested by law in the governing body of the corporation." *Id*. This sentiment has been reflected by other courts examining similar issues.[8]

---

[8] *See Great Rivers Co-op of Southeastern Iowa*, 198 F.3d at 704 (noting "disfavor for allowing a trier of fact to substitute its judgment for that of the cooperative's board" and that allowing such a remedy "would amount to the court's instituting its own equity redemption plan for that of the board and eviscerating the discretion specifically placed with the board of directors."); *Atchinson County Farmers Union Co-op Ass'n*, 736 P.2d at 920 (holding that the court "could not substitute its judgment for the judgment of the board of directors and declined to become involved in the financial structure of the cooperative to determine whether the board of directors acted reasonably.").

In this action, because the Bylaws expressly give Southern Pine's Board discretion related to the retirement of patronage capital, the business judgment rule applies and requires dismissal of Plaintiffs' claims.  *See* Bylaws Section 8.02 ("*If,* at any time prior to the dissolution or liquidation, the Board of Directors shall determine that the financial condition of the Cooperative will not be impaired thereby, the capital then credited to patrons' accounts *may be retired* in full or in part.") (emphasis added). Plaintiffs are clearly attacking the internal financial decisions of Southern Pine, which fall within the discretionary business judgment of Southern Pine's Board. *See* Compl., ¶ 11 ("[Southern Pine] could easily return a large amount of [patronage capital] to the member-owners and ratepayers while maintaining a safe and stable level of equity and short-term assets").  Since the Court cannot override or second-guess the Board's exercise of discretion in determining when a distribution is in the best interest of Southern Pine, the Court should dismiss Plaintiffs' claims.

**C.     Plaintiffs' Other Statutory and Common Law Claims Fail as a Matter of Law.**

All of Plaintiffs' statutory and common law claims are grounded in the underlying premise that Southern Pine has not been returning patronage capital to its members as required by the Act. Clearly, as addressed *supra*, that premise fails. As such, Plaintiffs other claims are similarly unsupported as a matter of law and subject to dismissal. Notwithstanding, each claim independently fails to state a cause of action and should be dismissed with prejudice.

i. <u>Count II (Fraudulent Concealment) Must Be Dismissed</u>

In Count II, Plaintiffs attempt to state a claim for fraudulent concealment based on Southern Pine's alleged failure to fully pay out patronage capital to its members in accordance with the Act. This claim is ripe for dismissal, as fraudulent concealment is not a freestanding claim, but instead "applies to any cause of action" and merely operates to toll a statute of limitations. *See Whitaker*

*v. Limeco Corp.*, 32 So. 3d 429, 436 (Miss. 2010). Here, because fraudulent concealment is not a freestanding claim under Mississippi law, it must be dismissed with prejudice.[9]

Moreover, Count II must be dismissed because Plaintiffs could never allege a cause of action with respect to fraudulent concealment and any amendment would be futile. In order to show fraudulent concealment, Plaintiffs must plead an affirmative act that is designed to prevent discovery of a claim and actions taken by Plaintiffs to uncover the alleged claim. *See Whitaker*, 32 So. 3d at 436-37; *Sanderson Farms Inc. v. Ballard*, 917 So. 2d 783, 786-87 (Miss. 2005). Plaintiffs *cannot* and did not plead an affirmative act by Southern Pine "designed to prevent discovery of a claim" because there has not been one, and Plaintiffs have done nothing to seek to uncover any of the underlying facts pled in the operative Complaint. Indeed, even after four amendments, Plaintiffs' cannot allege Southern Pine took a single affirmative step to conceal its process for returning capital credits. Compl. at ¶¶ 87-91. Plaintiffs have also been unable to allege a single act any of the named plaintiffs took to uncover how Southern Pine was operating. *Id.* Therefore, dismissal with prejudice is appropriate.[10]

### ii. Count III (Breach Of Fiduciary Duty) Fails as a Matter of Law

Plaintiffs next allege that Southern Pine owed a fiduciary duty to its members to distribute patronage capital each year. However, a cooperative, as an entity, does not owe a fiduciary duty to its members. Under Mississippi law, "a corporation owes no fiduciary duty to its shareholders, nor can it be held vicariously liable for the alleged breaches of its officers and directors." *Johnston v. Wilbourn*, 760 F. Supp. 578, 590 (S.D. Miss. 1991) (citing *Radol v. Thomas*, 772 F.2d 244, 258 (6th Cir. 1985) ("There is not, and could not conceptually be any authority that a corporation as an

---

[9] Even if fraudulent concealment were a freestanding claim, Plaintiffs have also failed to plead fraud with specificity, as required by Federal Rule of Civil Procedure 9(b).
[10] *See, e.g.*, *Aydin v. Daniels*, 179 So. 3d 1171 (Miss. Ct. App. 2015) (affirming dismissal where "[t]here [was] no evidence before [the Court] that [defendant] attempted to mask his actions or prevent discovery of his actions.").

entity has a fiduciary duty to its shareholders.")); *Allyn v. Dually*, 725 So. 2d 94, 103 (Miss. 1998). Here, Plaintiffs, as members of Southern Pine, are akin to shareholders of a corporation and there is no basis to conclude that Southern Pine, as an entity, owes them a fiduciary duty.

Southern Pine has been unable to locate a single case suggesting that a cooperative owes a fiduciary duty to its members. Instead, countless cases hold to the contrary. The absence of a fiduciary duty claim in similar factual scenarios is well-established in other jurisdictions.[11] Further, the very actions of Southern Pine are expressly permitted by the Bylaws and Mississippi law. It is well known that "[a] party to a contract cannot breach a fiduciary duty by doing what the contract authorizes the party to do." *Shapiro,* **Exhibit C** at *10. Indeed, the conduct that Plaintiffs complain of (failure to distribute patronage capital) is expressly governed by the Bylaws. *See Palmer v. Orkin Exterm. Co., Inc.*, 871 F. Supp. 912, 914 (S.D. Miss. 1994) (recognizing that a breach of fiduciary duty claim is improper if it "stems directly from the duties imposed by the contract, not from any duty owed to plaintiff independent of the contract"). Simply stated, Southern Pine's conduct cannot form the basis of a breach of fiduciary duty claim because the Bylaws expressly authorize those very same actions.[12] This count must be dismissed with prejudice.

    iii.    Count IV (Unjust Enrichment) Fails Because Plaintiffs have a Written Contract and Thus an Adequate Remedy At Law

---

[11] *See Wolfe*, 2017 WL 8184353, at *7 (Mont. 11th Dist. Ct. Dec. 21, 2017) ("The Court finds there is no genuine issue of material fact that there is no fiduciary relationship between the parties."); *Shapiro,* **Exhibit C** at *9 ("Because the [electric cooperatives] owe no fiduciary duty to their members, Plaintiffs have no breach of a fiduciary duty claim."); *Lockerman v. S. River Elec. Membership Corp.,* No. 11 CVS 152, 2012 WL 3252720, *6-9 (N.C. Super. Aug. 8, 2012) (holding electric cooperative did not owe fiduciary duty to members when retiring capital credits); *Denton Cnty. Elect. Co-op., Inc. v. Hackett,* 368 S.W.3d 765, 783 (Tex. Ct. App. 2012) (holding electric cooperative did not owe fiduciary duty to its members); *Prod. Credit Ass'n of Midlands v. Hanlon,* No. CIV. 87-249-A, 1990 WL 316187, *2 (S.D. Iowa June 14, 1990) (holding "[n]either the articles nor bylaws of the association created such a [fiduciary] duty, expressly or by implication, and neither does case law."); *Flegles, Inc. v. Truserv Corp.*, 289 S.W.3d 544, 552 (Ky. 2009) (holding relationship between a cooperative and its member, "courts have almost universally held not to be a fiduciary one."); *CCA Global Partners, Inc. v. Yates Carpet, Inc.*, 2006 WL 2883376, at *8 (E.D. Mo. 2006); *Pittman v. Groveowners Coop. of Loxahatchee, Inc.*, 534 So. 2d 1207, 1211 (Fla. 4th DCA 1988).

[12] Bylaws, Section 8.05 (providing the Board with discretion to make retirement of capital credit determinations); *see also Shapiro,* **Exhibit C** at *10 (dismissing claim against cooperative for failing to refund patronage where bylaws allowed for cooperative's actions and noting that, "A party to a contract cannot breach a fiduciary duty by doing what the contract authorizes the party to do.").

Plaintiffs' unjust enrichment claim fails as a matter of law and must be dismissed because Plaintiffs have a written agreement with Southern Pine that governs the same subject matter as alleged in the Complaint.[13] A claim for unjust enrichment cannot survive where an express contract exists between the parties that purportedly governs the same subject matter.[14]  That is to say, where a valid contract exists between the parties, no claim for unjust enrichment can be made.  *See Montgomery v. CitiMortgage, Inc.,* 955 F. Supp. 2d 640, 656 (S.D. Miss. 2013); *Willis v. Rehab Solutions, PLLC,* 82 So. 3d 583, 588 (Miss. 2012); *Walker*, 802 S.E.2d 643, 668.  There is no dispute that a written contract exists between Plaintiffs and the Cooperative through the Bylaws; thus, this claim must be dismissed.

This argument has been adopted by courts around the country in nearly-identical rural electric cooperative matters. *See Clarke*, 139 So. 2d at 642 ("it is settled law that the by-laws of a corporation evidence the contract between it and its members… and govern the transaction between them.") (internal quotation and citation omitted).[15]  Given it is undisputed as a matter of law that an express contract exists between Plaintiffs and Southern Pine—the Bylaws—this Court must dismiss Plaintiffs' unjust enrichment claim.

    iv.    Count V (Conversion) Cannot be Based on a Mere Obligation to Pay an Untraceable, Non-Specific Amount of Money

---

[13] As stated above, Mississippi Code 77-5-223 requires the Board to adopt and amend bylaws, and Mississippi Code 77-5-203 defines a "member" of an electric cooperative as an individual retaining membership pursuant to the cooperative's Bylaws.  Although Plaintiffs did not attach the Bylaws to the Complaint, they are clearly critical and interwoven to Plaintiffs' claims.

[14] *See Allstate Life Ins. Co. v. Parnell*, 292 F. App'x 264, 275 (5th Cir. 2008) (applying Mississippi law); *Cherry Bark Builders v. Wagner*, 781 So. 2d 919, 922 (Miss. Ct. App. 2001).

[15] *See also Cessna*, 258 F. Supp. 3d at 591 (dismissing unjust enrichment claim because the Bylaws govern the relationship between the plaintiffs and the cooperative); *Shapiro*, **Exhibit C** at 15 ("Because the [electric cooperative]'s bylaws are a legal contract between Plaintiff and the [electric cooperative] in which they are members, Plaintiffs' claims for unjust enrichment fail to state a claim and are due to be dismissed.").

18

Plaintiffs' conversion claim must be dismissed as conversion claims require specific and identifiable property to sustain a cause of action. Mississippi courts have repeatedly stated that money and other intangible assets cannot be converted under Mississippi law unless the funds or other property can be specifically identified. *See Morris Schneider Wittstadt, LLC v. Beau Rivage Resorts, Inc.*, No. 1:15CV403-LG-RHW, 2016 WL 1254387, at *3 (S.D. Miss. Mar. 29, 2016).[16] The mere failure to pay money allegedly owed does not give rise to a conversion claim. *See Morrone Co. v. Barbour*, 241 F. Supp. 2d 683, 689 (S.D. Miss. 2002) ("[T]his claim alleges nothing more than a failure to pay royalties required by the licensing agreement and, therefore, does not constitute a proper conversion action.").

Here, Plaintiffs cannot specifically identify any funds that are subject to conversion. Southern Pine does not have a cash account for each member with his or her specifically identified patronage capital.  Rather, this capital is invested back into Southern Pine's operations and used to keep rates low and can be found in power poles, transmission lines, substations and all of the items necessary to provide electric energy to homes and businesses.  As such, Plaintiffs are complaining of a lack of payment, like the plaintiff in *Morrone*, and not conversion. *Id.* at 689.

Further, Plaintiffs' conversion claim must be dismissed because Plaintiffs have not alleged any positive, tortious conduct on the part of Southern Pine. To establish the tort of conversion, "there must be proof of a wrongful possession, or the exercise of a dominion in exclusion or defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand." *Wilson v. Gen. Motors Acceptance Corp.*, 883 So. 2d 56, 69 (Miss. 2004).  Proof of "intent to exercise dominion or control over goods which is inconsistent with the true owner's

---

[16] *See also Fid. & Guar. Life Ins. Co. v. Williams*, No. 1:06cv959-LG-RHW, 2008 WL 336605, at *5 (S.D. Miss. Feb. 1, 2008) ("A cause of action exists for conversion of money only when money is earmarked or otherwise identifiable, such as enclosed in a container like a bag or chest.").

right" is required to demonstrate conversion. *Id.* Here, Plaintiffs do not allege that Southern Pine has embezzled, misappropriated or used certain money for its personal use or in a way that is adverse to its members. Instead, the patronage capital at issue has been invested in Southern Pine and will help keep rates affordable, which was the very purpose to which it was to be utilized.[17]

Moreover, "ownership of the property is an essential element of a claim for conversion." *Wilson v. Gen. Motors Acceptance Corp.,* 883 So. 2d 56, 68 (Miss. 2004)   Plaintiffs here fail to demonstrate that they have a current and vested ownership interest in the funds they seek. *Mosley v. GEICO Ins. Co.*, No. 3:13-CV-161-LG-JCG, 2014 WL 7882149, at *6 (S.D. Miss. 2014) (holding no grounds for conversion where plaintiffs "do not claim that they were ever in possession of the [allegedly converted] funds [and] point to no evidence that they are the true owners of the funds, which is essential to a claim of conversion under Mississippi law.").  As discussed at length in Section B(iv), *supra*, the Bylaws reveal that Plaintiffs do not have a vested ownership interest in their patronage capital. Courts have made clear that a member's equity, shown on the books as patronage capital, does not vest until the board of directors decides in its business judgment to retire such capital. Accordingly, Plaintiffs' conversion claim must be dismissed.

v. <u>Count VI (Constructive Trust) is Not an Independent Cause of Action</u>

Plaintiffs' claim for constructive trust fails as a matter of law.  First, a constructive trust is not a cause of action—it is an equitable remedy—and it cannot be pled as a separate count. *Joel v. Joel,* 43 So. 3d 424, 431 (Miss. 2005) (determining that "a constructive trust is a proper *remedy*") (emphasis added); *Allred v. Fairchild,* 785 So. 2d 1064, 1068 (Miss. 2001) (holding a constructive trust is a "fitting remedy to right such unjust enrichment").  Courts should only impose constructive

---

[17] *See* Bylaws, Section 8.02; Miss. Code Ann. § 77-5-205 (noting the intent to create "a corporation not organized for pecuniary profit for the purpose of promoting and encouraging the fullest possible use of electric energy by making electric energy available at the lowest cost consistent with sound economy and prudent management of the business of such corporations.").

trusts where they are based upon an independent, established cause of action.  *See Barriffe v. Estate of Nelson*, 153 So. 3d 613, 628 (Miss. 2014) (noting that "[a] constructive trust is an equitable remedy," thereby implying that it is not an independent cause of action.

Second, because Plaintiffs fail to state a valid equitable claim, they have provided no basis for imposing a constructive trust.  *See Drew v. Langford*, 666 So. 2d 739, 743 (Miss. 1995) (holding that without a corresponding equitable claim, the remedy of a constructive trust is not legally cognizable); *McNeil v. Hester*, 753 So. 2d 1057, 1064 (Miss. 2000) (citations omitted) ("A constructive trust is a fiction of equity created for the purpose of preventing unjust enrichment by one who holds legal title to property which, under principles of justice and fairness, rightfully belongs to another."); *Alvarez v. Coleman.*, 642 So. 2d 361, 367 (Miss. 1994) ("Constructive trusts are created for the purpose of preventing unjust enrichment . . .").  This count should be dismissed.

### vi. Count VII (Statutory Trust) Cannot be Pled as an Independent Cause of Action

In Count VII, Plaintiffs request that the Court impose a statutory trust pursuant to Mississippi Code § 91-8-101.  However, this claim must be dismissed with prejudice.  First, Section 91-8-101 does not provide for the imposition of a statutory trust. "[A] 'statutory trust' is a legislative creation and is therefore not an express trust in the absence of an intention by the parties to create a fiduciary agreement between themselves." 76 Am. Jur.2d, Trusts, § 159 (1992).  In other words, a statutory trust is permissible when the legislature allows for it; but here, Plaintiffs have cited to no provision of Mississippi law indicating that the legislature intended to create a statutory trust in the circumstances of this case.  Because statutory trust is not a cause of action under Mississippi law, this claim must be dismissed. Further, like a constructive trust, a statutory trust is simply an equitable remedy, not a claim, and cannot be pled as a separate count. *See, e.g.*, *Ruby Robinson Co., Inc. v. Kalil Fresh Mktg., Inc.*, CIV.A. H-08-199, 2010 WL 3701579, at *2

(S.D. Tex. Sept. 16, 2010), *aff'd sub nom. Ruby Robinson Co., Inc. v. Herr*, 453 Fed. Appx. 463 (5th Cir. 2011) (discussing a "statutory trust remedy"). This claim must therefore be dismissed.

### vii. Count VIII (Money Had and Received) is Without Merit

Plaintiffs' claim for money had and received (Count VIII) also fails to state a claim. "In an action for money had and received, the plaintiff need[s to] . . . show that the defendant holds money, which in equity and good conscience belongs to the plaintiffs." *Dorsey Miss. Sales, Inc. v. Newell*, 168 So. 2d 645, 651 (Miss. 1964) (citation omitted). Plaintiffs have made no such showing, and as *Clarke* explains "equity credits allocated to a patron on the books of a cooperative do not reflect an indebtedness which is presently due and payable by the cooperative to such patron." 139 So. 2d at 641. Moreover, as thoroughly covered in the Bylaws, when Southern Pine credits a member's capital account, it operates as if Southern Pine **returned** cash to the member and the member in turn made a capital contribution to Southern Pine. Bylaws, § 8.02(b). As such, to the extent Southern Pine ever held money that belonged to Plaintiffs under Miss. Code Ann. § 77-5-235 (which it did not), that money was returned by operation of the parties' contract—the Bylaws—and Plaintiffs have failed to state a cause of action.[18]

### viii. Count IX (Negligence Per Se) Fails as a Matter of Law

Finally, negligence per se (Count IX) is properly asserted in situations involving "a violation of a safety statute." *Harver v. Hinson*, 385 So. 2d 605, 608 (Miss. 1980). Clearly, the statute relied on by Plaintiffs as the cornerstone of their claim—Miss. Code Ann. § 77-5-235—is not a safety statute. Even if negligence per se had broader application, Plaintiffs would first have

---

[18] *See Caver*, 2015 WL 5286501, at *7 (in granting a motion to dismiss identical statutory claims against a cooperative with a similar provision in its Bylaws as § 8.02(b) in Southern Pine's, finding "that even if [the operative excess revenue statute] is properly interpreted as requiring cash distribution of Excess Revenues each year [which the court previously rejected], plaintiffs and other [cooperative] members have contracted away that right by agreeing in the Bylaws to return such cash payments to [cooperative] as capital contributions, with the result being that no cash changes hands and [cooperative] records those contributions as accounting credits.").

to prove a violation of § 77-5-235. For all of the reasons discussed *supra*, Southern Pine has not violated the Act and therefore negligence per se is inapplicable to this case. As such, Count IX should be properly dismissed by the Court for failure to state a claim.

ix. Plaintiffs' Declaratory Reief Claim is Without Merit

When considering a declaratory judgment action, a district court must engage in a three-step inquiry: (i) whether the declaratory action is justiciable; (ii) whether the Court has authority to provide the relief requested; and (iii) whether the Court should exercise its broad discretion to dismiss or entertain a declaratory action. *Orix Credit Alliance v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). Typically, the question of whether a claim is justiciable becomes a question of whether an "actual controversy" exists between the parties to the action. *Rowan Companies, Inc. v. Griffin*, 876 F.2d 26, 27–28 (5th Cir. 1989). In the present case, Plaintiffs' declaratory relief claim is not justiciable because it purports to create an "actual controversy" between Southern Pine and all of its members when no such controversy exists. Compl. at ¶ 123. As evidenced by comments to public articles on the copycat lawsuits like this one filed by Plaintiffs' counsel, members of Southern Pine and other cooperatives across the state are not in favor of these lawsuits and do not want them to continue.[19] Moreover, Plaintiffs' declaratory relief claim is not justiciable because it

---

[19] "[I have been a M]ember of Singing River Electric for the past 26 years. How many of the 55,517 members have actually engaged these shyster lawyers? I know that I have not! Singing River has a Board of Directors duly elected by the membership. In the event that a member has a problem, they should contact a board member. I fully appreciate that Singing River has managed funds such that in the event of a disaster like Katrina, the infrastructure can be quickly rebuilt without incurring debt! I'm old enough to remember when the legal profession had some ethics. This lawyer is representing 'himself' in an effort to 'steal' funds from co-op members!"
* * *
"[Coast] is to be commended on its percentage of reserves. [Coast] is audited annually and is financially above-board . . . . I would like [the Judge] to know that [Coast's] reserves could cover a 'named' storm. But what about the year after [Coast]'s reserves are hit with two named storms—or more? The Member-Owner struck by disaster should not also be struck by increased electric rates caused by reserves depleted through an unwise lawsuit."
Comments in response to Anita Lee, *Electric co-ops are holding onto millions that belong to Coast customers, lawsuit says*, MISSISSIPPI SUN HERALD (April 23, 2019) (available at https://www.sunherald.com/news/local/article229543714.html); Martha Van Peski, *Electric Coop Lawsuit is Unwise*, MISSISSIPPI SUN HERALD (April 28, 2019) (available at https://www.sunherald .com/opinion/letters-to-the-editor/article229675574.html).

seeks to re-litigate a rate discrimination issue under *The Door Shop Inc. v. Alcorn County Electric Power Association,* 2017-CA-00956-SCT, 2018 WL 5839172, at *6 (Miss. Nov. 8, 2018) that has already been determined by the lower court. *See* State Court Dkt. 131 ("this action does not implicate rate discrimination concerns, as contemplated in [*Door Shop*].").[20] As such, the Court should exercise its broad discretion and dismiss Plaintiffs' claim for declaratory relief.

**D.     Portions of Plaintiffs' Request for Relief Must Be Stricken**

Finally, Plaintiffs overreach in their request for relief in the Fourth Amended Complaint. Compl. at 27-29. Specifically, Plaintiffs pray for an accounting, an award of attorneys' fees, and the appointment of a receiver post-judgment. None of these requests are appropriate and cannot be granted by the Court. Therefore, they should be stricken from the Fourth Amended Complaint.

i. Prayer for an Accounting

Plaintiffs request an "accounting of all accounts held by current and former members, deceased or living, as required by law."  But accounting is a claim for equitable relief, and only available when a party lacks an adequate remedy at law.  *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962) ("The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is . . . the absence of an adequate remedy at law."); *see also Ward v. Life Investors Ins. Co. of Am.*, 383 F. Supp. 2d 882, 886 (S.D. Miss. 2005) ("An inadequate remedy at law is a necessary prerequisite to a claim for an equitable accounting."). Plaintiffs have an adequate remedy at law; accordingly, an accounting is improper.

ii. Request for Attorneys' Fees

Plaintiffs claim entitlement to fees "for their efforts to have money held in trust and/or otherwise returned to other similarly situated member-ratepayers of Southern Pine" under Miss.

---

[20] A copy of the state court's order on rate discrimination is attached to the Motion as **Exhibit E**.

Code § 91-8-102. Compl. at 29. While the Trust Code allows for attorneys' fees "[i]n a judicial proceeding <u>involving the administration of a trust</u>," the creation of a trust does not constitute the "administration" of said trust. "Administration" only applies to day-to-day *management*. Miss. Code Ann. § 91-8-1004(a). Section 91-8-201 includes a non-exhaustive list of proceedings that involve administration of a trust—appointing or removing trustees, reviewing a trustee's actions, approving a trustee's report or accounting, terminating a trust, or ascertaining trust beneficiaries. *See* Miss. Code Ann. § 91-8-201 ("Role of Court in Administration of Trust"). *Creation of the trust* is not on the list. The Trust Code is also not intended to apply to the "constructive trust" Plaintiffs purport to establish here. Instead, the Trust Code only applies to and governs *traditional* express trusts.[21] Plaintiffs' request for fees must therefore be stricken.

   iii. <u>Appointment of a Receiver</u>

Plaintiffs request the Court appoint a receiver over Southern Pine to oversee the distribution of approximately $112,500,000 in patronage capital on Southern Pine's books. However, Plaintiffs fail to articulate at any point throughout their Complaint on what authority a receiver could be appointed. The appointment of a receiver is a drastic, extraordinary remedy that would immediately put Southern Pine in default under its loan obligations.[22] As such, Plaintiffs' wholly deficient request that a receiver be appointed should be stricken from this case.

## III. <u>CONCLUSION</u>

Defendant, Southern Pine Electric Cooperative, requests that the Court enter an Order dismissing Plaintiffs' Complaint in its entirety, and awarding Southern Pine its attorney's fees and costs in having to defend this action, and any other relief the Court deems just and proper.

---

[21] *See* Miss. Code Ann. § 91-8-102 ("This chapter applies to express trusts . . . and trusts created pursuant to a statute, judgment, or decree that requires the trust to be administered in the manner of an express trust.").

[22] *See* Dkt. 12 at 9-10 (discussing the terms of Southern Pine's loan agreements with the Rural Utilities Service).

DATED this <u>26th</u> day of August, 2019.

Respectfully submitted,

By: <u>/s/ *Christina M. Schwing*</u>
Christina M. Schwing, Esq. (admitted *pro hac vice*)
Robert M. Gore, Esq. (MSB #105214)
**HOLLAND & KNIGHT LLP**
Email: Chris.schwing@hklaw.com
Email: Robert.gore@hklaw.com
50 N. Laura Street, Suite 3900
Jacksonville, FL 32202
Telephone: (904) 353-2000
Secondary Email: cathy.luke@hklaw.com

S. Wayne Easterling (MSB #5290)
Post Office Box 1471
Hattiesburg, MS 39403
Telephone: (601) 544-8900
Email: easterlinglaw@aol.com

G. David Garner (MSB #9544)
124 Main Street
Post Office Box 789
Raleigh, MS 39153
Telephone: (601) 782-9090
Email: gdgarner@gdgarnerlaw.com

**ATTORNEYS FOR DEFENDANT, SOUTHERN
PINE ELECTRIC COOPERATIVE**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on all known counsel of record on this 26th day of August, 2019, by ECF.

Walker W. Jones, III, Esq.
Michael D. Simmons, Esq.
Justin R. Glenn, Esq.
Brannon L. Berry, Esq.
David W. Baria, Esq.
**COSMICH SIMMONS & BROWN, PLLC**
100 Vision Drive, Ste. 200
P.O. Box 22626
Jackson, MS 39225-2626
bill.jones@cs-law.com
mike@cs-law.com
jglenn@cs-law.com
brannon.berry@cs-law.com
david.baria@cs-law.com

Henry T. Holifield, Esq.
132 Summer Lake Drive
Ridgeland, MS 39157
henryholifield@gmail.com

Michael G. Pond, Esq.
1650 Leila Drive
Jackson, MS 39216
michael@pondlawoffice.com

Robert L. Johnson
5600 Jackson Raymond Road
Raymond, MS 39154
rlj3law@bellsouth.net

John Raymond Tullos
Post Office Box 74
Raleigh, MS 39153
johntullos@tullosandtullos.com

**ATTORNEYS FOR PLAINTIFF**
**KIMBERLY HARPER, *ET AL*.**

By: /s/ *Christina M. Schwing*
Attorney

27